## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CHARLES PITTS**

    **Petitioner,**

**v.**                           **Case No. 8:19-cv-932-CEH-JSS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    **Respondent.**
_____/

## O R D E R

This cause comes before the Court on Charles Pitts's petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1) Pitts challenges his state convictions for sexual battery, false imprisonment, and domestic battery by strangulation. Upon consideration of the petition (Doc. 1), the response (Doc. 12), and the reply (Doc. 16), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the petition will be **DENIED**.

### Procedural Background

Pitts was charged with three counts of sexual battery (life felonies), one count of kidnapping (first-degree felony punishable by life), and domestic battery by strangulation (third-degree felony). (Doc. 13-2, Ex. 1) Pitts entered a negotiated guilty plea to the reduced charges of three counts of felony sexual battery (second-degree felonies), one count of false imprisonment (third-degree felony), and domestic battery

by strangulation (third-degree felony).   (Doc. 13-2, Ex. 3 at 19–20; Ex. 4)[1]   In accordance with the plea agreement, Pitts was sentenced to concurrent terms of fifteen years imprisonment for each of the sexual battery convictions and five years imprisonment for each of the false imprisonment and domestic battery convictions. (Doc. 13-2, Ex. 4)  Pitts did not appeal his convictions and sentences.  Pitts moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 13-2, Exs. 6, 8, 10, 12)  The state post-conviction court denied the motion and the state appellate court *per curiam* affirmed the denial.  (Doc. 13-2, Exs. 16, 20)  The state court denied Pitts's Rule 3.800(c) motion to correct an illegal sentence and the state appellate court affirmed the denial. (Doc. 13-2, Exs. 24, 28)

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

---

[1] The page numbers cited in this Order correspond to the page numbers assigned to the exhibits on the electronic docket in CM/ECF.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Pitts's Rule 3.850 motion. (Doc. 13-2, Ex. 20)  The state appellate court's affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."

4

*Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 563 U.S. at 181–82. Pitts bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## Standard for Ineffective Assistance of Counsel

Pitts claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Pitts must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Pitts must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Pitts cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in

7

> grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Under 28 U.S.C. § 2254(d) Pitts must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is

governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct. 191 (2013).

## Discussion

During Pitts's change of plea hearing the prosecutor presented the following factual basis (Doc. 13-2, Ex. 3 at 30–31):

> The offense occurred on March 1, 2013, 1:15 a.m. at 10368 3rd Street North, Apartment C, St. Petersburg, Pinellas County, Florida. Defendant and [REDACTED]. The victim was at the residence. The defendant returned home. He duct taped her hands, feet, placed a sock in her mouth, and duct taped her head. He then carried her, placed her in the bath, filled the bathtub with water, began to strangle her, place her under the water, strangled her three times and punched her. He then threw a knife into the bathtub where she was able to free herself by cutting the duct tape on her feet, her hands, and then pulling the duct tape off of her face. She went into the bedroom where the defendant appeared with a samurai sword. He then forced the victim to perform oral sex on him. He then forced her, and he vaginally and anally raped her.

Pitts did not object to the factual basis.

The trial judge conducted a colloquy with Pitts about his decision to plead guilty (Doc. 13-2, Ex. 3 at 27–30):

> THE COURT: All right. Okay.
>
> Mr. Pitts, raise your right hand, please, sir.
>
> (Defendant sworn.)
>
> THE COURT: Thank you. You may put down your hand. What's your full name, please, sir?
>
> THE DEFENDANT: Charles Edward Pitts, Junior.

9

THE COURT: How old are you, sir?

THE DEFENDANT: I'm 29.

THE COURT: How far did you go in school?

THE DEFENDANT: I have an associate's degree.

THE COURT: Can you read and write, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you read over and understand all the rights outlined in this plea form that I see you signed?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you understand all those rights?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you have the opportunity to discuss it with your lawyer?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand that the maximum possible penalty has gone from four life sentences plus five years to 55 years—

THE DEFENDANT: Yes, ma'am.

THE COURT: —as the maximum penalty? That's not what you're getting, but that's the current maximum. So you do understand that, correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you under the influence of alcohol, drugs, or medication of any kind this morning?

THE DEFENDANT: No, ma'am.

THE COURT: Satisfied with the help and advice you've gotten from Ms. Ligon and Ms. McCabe?

THE DEFENDANT: Yes, ma'am.

THE COURT: Understand if you are not a U.S. citizen, you would be deported?

THE DEFENDANT: Yes, ma'am.

THE COURT: Understand that you will have five felony convictions on your record?

THE DEFENDANT: Yes, ma'am.

THE COURT: Ms. McCabe, Ms. Ligon, having reviewed discovery, are you or your client aware of any physical evidence disclosed by the State for which DNA testing would exonerate the defendant?

MS. McCABE: No, Your Honor.

THE COURT: All right.

MS. LIGON: No, Your Honor.

THE COURT: All right. Ms. Festa, are you?

MS. FESTA: No.

THE COURT: And I probably asked this. Do you understand if you're not a U.S. citizen, you would be deported, correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And you understand that you may be screened for involuntary civil commitment under the Jimmy Ryce Act prior to your release from prison?

THE DEFENDANT: Yes, ma'am.

11

THE COURT: You understand you're giving up all of your rights to a jury trial?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. So by entering a guilty plea, whether it's because you're admitting you're guilty or because it's in your best interest, you are saying I am no longer contesting this, I am entering a guilty plea and taking the disposition that has been offered to me?

THE DEFENDANT: Yes, ma'am.

THE COURT: Which is a tradeoff and because you were looking at a possibility of up to four life sentences plus five.

THE DEFENDANT: Yes, ma' am.

THE COURT: Okay. And people make that kind of decision every day. I just want you to understand that is the decision you make. And when you make that, that's a decision you're sticking with. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you need any more time to talk to your lawyers about any part of this case?

THE DEFENDANT: No, ma'am.

THE COURT: All right. So you're ready to go forward with the guilty plea, correct?

THE DEFENDANT: Yes, ma'am.

The trial judge accepted Pitts's plea, finding the plea to be free and voluntary, that Pitts was alert and intelligent, represented by able trial counsel with whom he expressed his satisfaction, that a sufficient factual basis existed for the plea, and that Pitts understood his rights and the consequences of pleading. (Doc. 13-2, Ex. 3 at 31)

Pitts must overcome the "well settled [general principle] that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).[2]  Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Although the *Strickland* standard controls a claim that counsel was ineffective for recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52, (1985), the quantum of evidence needed to prove both deficient performance and prejudice is different. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with

---

[2] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

13

an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).   To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

A voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea.  *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973); *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (holding that a voluntary guilty plea waives all non-jurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary"), *cert. denied*, 531 U.S. 919 (2000).  *See also Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (holding that a pre-plea claim of ineffective assistance of counsel is waived and "only an attack on the voluntary and knowing nature of the plea can be sustained").

The Respondent argues that Pitts's voluntary and intelligent guilty plea forecloses federal review of Grounds One through Four.  (Doc. 12 at 12–16)  The Court notes that in Ground Five of his petition, in which he alleges a cumulative error claim, Pitts argues that "the cumulative effect of such acts, omissions, errors, and deficiencies [as alleged in Grounds One through Four of the federal petition] when considered as a whole, did cause enough prejudice to cause Petitioner['s] guilty plea to be entered involuntarily."  (Doc. 1 at 20)  In his reply Pitts argues that the alleged

instances of ineffective assistance of counsel caused his plea to be "involuntary" or "coerced."  (Doc. 16 at 9, 10, 11, 17, 21)  Although framed as grounds of ineffective assistance of counsel, to the extent that Pitts alleges that counsels' errors bore upon the voluntariness of his guilty plea, the grounds are reviewed on the merits.

**Ground One**

Pitts contends that his trial counsel and co-counsel rendered ineffective assistance by affirmatively misrepresenting co-counsel's "status and ability," which caused him to reject a favorable plea offer.  Pitts alleges that his retained trial counsel, Shannon Ligon, hired co-counsel Kelly McCabe to assist her because counsel "felt she was not qualified to handle the case herself."  (Doc. 1 at 6)  Pitts "specifically asked trial counsel whether or not Ms. McCabe had any relations to State Attorney Bernie McCabe" and that trial counsel advised that "she hired Ms. McCabe because Ms. McCabe could use her special ties to the State Attorney['s] Office to get a better plea offer than she could."  (*Id.*)  Pitts claims that this alleged statement caused him to assume that Ms. McCabe was actually related to the State Attorney.  Pitts claims that Ms. McCabe advised him that the State had extended a plea offer of five years imprisonment, which alleged offer Pitts told Ms. McCabe he would accept.  Pitts alleges that Ms. McCabe told him that "she would let the State know that he's willing to accept the offer but she would also try and get a lower offer first . . . and asked "if she could try and get him a plea deal somewhere in the 3-year range with no sex offender sanctions."  (Doc. 1 at 7)  Pitts asserts that several months later he was brought before the trial court under the assumption that he would be sentenced to five

15

years imprisonment pursuant to the plea offer.  Instead, he was brought before the court for jury selection and advised by trial counsel that the five-year offer was no longer available.  After speaking with the prosecutor, counsel told Pitts that the State offered a fifteen-year plea deal that he could either accept or proceed to trial.  Pitts alleges that he "involuntarily" accepted the fifteen-year offer.  (*Id.* at 7)

Pitts contends that he ultimately learned that Ms. McCabe was not related to the State Attorney as he was led to believe and that both his trial counsel and co-counsel misrepresented Ms. McCabe's relationship to the State Attorney.  Pitts argues that if trial counsel had alerted him that Ms. McCabe was not the daughter of the State Attorney and that she did not have a special relationship with the State Attorney, he "would have insisted that Ms. McCabe notify the State Attorney['s] Office that he was willing to accept the 5-year plea offer as opposed to Ms. McCabe pushing for a lower plea offer prior to notifying the State that Petitioner had accepted the 5-year offer."  (*Id.* at 8)  Pitts alleges that counsels' alleged errors deprived him of his rights under the Florida constitution and the Sixth and Fourteenth Amendments of the United States constitution.[3]

---

[3] To the extent that Pitts asserts a violation of the Florida Constitution, he cannot obtain federal relief because such a claim is not cognizable on federal review. Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990). A state's interpretation of its own laws provides no basis for federal habeas relief because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state law questions.").

The state post-conviction court denied relief on Pitts's claims of ineffective assistance of counsel as follows (Doc. 13-3, Ex. 16 at 5–8) (court's record citations omitted):

### Ground One (a)

First, that counsel was ineffective for misrepresenting Ms. McCabe's relationships with the State Attorney and the Office of the State Attorney. Defendant alleges resulting prejudice in that but for counsel's misrepresentations, he would not have gone along with his counsel's strategy to negotiate a plea and would have insisted on preparing for and going to trial. The State was directed to respond to this claim.

In its response, the State claims that despite the fact that Ms. McCabe is not the daughter of the State Attorney Bernie McCabe, Defendant did receive a substantial plea negotiation. The State alleges that Defendant was facing a range of 390 months in prison up to four life sentences. The State alleges that Defendant received a reduction in his charges and a sentence of fifteen years' imprisonment, which was still a departure from the guidelines range after the charges were reduced.

The Court finds that this claim is without merit. First, the Court notes that counsel was privately retained. If Defendant did not agree with counsel's strategy to attempt to garner a favorable plea deal because he was actually innocent then he should have fired his counsel pre-trial and hired a different attorney. Second, while the Court notes that Defendant alleges it was Ms. Ligon who misrepresented to him that Ms. McCabe was the daughter of State Attorney Bernie McCabe, Defendant fails to allege whether or not he attempted to verify this information with Ms. McCabe herself or even the Assistant State Attorney during pre-trial hearings or at his change of plea. Defendant's blind reliance on an easily verifiable fact does not persuade this Court that his plea should be set aside. Third, the Court notes the inherent absurdity in Defendant's allegation that he believed he would get a plea offer somewhere in the three-year range when Defendant

17

was facing up to four life sentences for the charges in this case.

The Court refers to a pretrial hearing held on August 23, 2013, that appears to refute Defendant's allegations that plea negotiations started at five years' imprisonment and he was expecting better than that. It also appears to refute Defendant's allegations that counsel was not preparing the case for trial. At the August 23, 2013[,] pretrial hearing, at which Defendant was present, Ms. Ligon advised the Court that she was attempting to obtain the remaining discovery from the State as well as secure dates for conducting depositions. Ms. Ligon indicated that she has gone through with Defendant the discovery that she had at that time already received. The Court inquired whether any plea negotiations were taking place or whether the case should be set for trial. In so doing, the Court indicated to Defendant that Beverly Andringa, who State Attorney Mr. McCabe had trusted for many years to resolve sex cases, would be retiring shortly, so, Defendant should begin plea negotiations before Ms. Andringa left, if he so wished. The Court even specifically addressed Defendant, saying "So I am saying, Mr. Pitts, that pretty soon you're not going to be in a position to make any deal for anything." The Court further surmised that the State would be asking for a lot of time, to which the State agreed. Ms. Ligon indicated that the State had advised her that in this circuit, plea negotiations typically begin with the defense making an offer; Ms. Ligon intimating that Defendant and the State did not appear to be in the same ballpark with respect to a plea offer.

The record from the August 23, 2013[,] pretrial hearing clearly indicates to Defendant that only a substantial plea offer would be accepted by the State. It refutes his allegation that the State had begun plea negotiations with a five-year offer. Defendant entered his guilty pleas on July 15, 2014, eleven months after his August 2013 pretrial. Notably, Ms. McCabe did not file a notice of appearance until January 8, 2014, at which time Defendant had already been made aware that a substantial plea offer would be necessary to resolve this case absent a trial. Additionally, Ms. McCabe indicated at an April 17, 2014[,] pretrial hearing that

18

Defendant had made an offer to the State, which the State rejected. Finally, the record reflects that counsel was preparing for trial by deposing the victim in the case and seeking medical records. Thus, Defendant had plenty of time to either accept the fact that he would have to make a substantial plea offer or to urge his counsel to prepare for trial or to hire different counsel to prepare for trial in the manner he suggests in his motion.

In addition to the Court finding that Defendant's claim is refuted by the record, the Court further finds that based on the totality of the circumstances, Defendant has failed to establish prejudice. Defendant's three life felonies in counts one, two, and three were reduced to second-degree felonies; and his punishable by life first degree felony in count four was reduced to a third-degree felony. Thus, Defendant was facing up to four life sentences if he proceeded to trial. But, by entering his guilty plea, he received concurrent fifteen-year sentences. During the plea colloquy, Defendant indicated that he had read and understood all of his rights contained on the plea form. He indicated that he was satisfied with the help and advice of both Ms. Ligon and Ms. McCabe. The Court asked Defendant if he understood that by entering his guilty plea, he was indicated that he would no longer contest the charges and that when he makes such a decision, he must stick with it; to which Defendant agreed he did understand. Defendant's defense of consent would have been weak in light of the violent acts described by the victim. Accordingly, based on the totality of the circumstances, the Court finds that Defendant has not demonstrated a reasonable probability that he would have proceeded to trial. *See Grosvenor,* 874 So.2d at 1181–82. Ground One(a) is denied.

**Ground One (b)**

Second, that Defendant's plea was involuntary. A claim alleging an involuntary plea is cognizable in a motion for postconviction relief. *See* Fla. R. Crim. P. 3.850(a)(5). The defendant has the burden of showing that a plea was not knowingly and voluntarily entered. *See Gillis v. State*, 807 So. 2d 204, 206 (Fla. 5th DCA 2002). An involuntary plea claim can be summarily denied where the record conclusively refutes the claim. *Id.* The movant must

demonstrate that withdrawal of the plea is necessary to correct a "manifest injustice." *LeDuc v. State*, 415 So. 2d 721, 722–723 (Fla. 1982) (citing *Williams v State*, 316 So. 2d 267 (Fla. 1975)). Defendant alleges that his plea was not knowingly and voluntarily entered due to the misrepresentations made by counsel combined with counsels' failure to prepare for trial, forcing him to enter a plea or proceed to trial with unprepared counsel. The State was directed to respond to this claim.

In its response, the State contends that the record refutes Defendant's claim. The Court agrees. As discussed in Ground One (a), Defendant was on notice that only a substantial plea offer would be considered by the State. Defendant's reliance on Ms. Ligon's misrepresentation regarding Ms. McCabe's alleged relationship with the State Attorney is ridiculous in light of the Court's and the State's repeated indications that only a substantial plea offer would be considered. Moreover, the record demonstrates that counsel was actively preparing the case for trial by attempting to obtain discovery from the State, conducting depositions, and obtaining medical records regarding the victim. The plea colloquy between the Court and Defendant further indicates that his plea was knowingly and voluntarily entered. *See* Fla. R. Crim P. 3.172(c)[.] Again, as discussed in Ground One (a), Defendant indicated during his plea colloquy that he was satisfied with his counsel, that he did not need any more time to discuss any part of his case with his counsel, and that he was ready to go forward with his plea. Accordingly, the Court finds that the record refutes Defendant's claims that his counsel was not prepared for trial and that his plea was not knowingly and voluntarily entered. Therefore, Ground One (b) is denied.

Pitts presents no evidence substantiating his allegations that either Ms. Ligon or Ms. McCabe misrepresented Ms. McCabe's relationship to the State Attorney. As to the validity of his guilty plea, the record supports the state court's denial of relief. Pitts faced multiple life sentences upon conviction at trial. The sentence of fifteen years

imprisonment was available only as a result of the plea offer.  Pitts signed a written change of plea form averring, *inter alia*, that the plea was in his best interest and that no one had pressured or forced him to enter the plea.  (Doc. 13-2, Ex. 2 at  5)  Pitts's sworn statements at the colloquy demonstrate that he understood the charges against him, the consequences of his plea, and the sentence he faced upon entering a guilty plea.  The record supports the state court's conclusion that Pitts's plea is both knowing and voluntary and that he entered the plea without coercion.  *Stano*, 921 F.2d at 1141. *See also United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005) ("To determine that a guilty plea is knowing and voluntary the district court must establish that '(1) the guilty plea is free from coercion; (2) the defendant . . . understands the nature of the charges; and (3) the defendant . . . knows and understands the consequences of his guilty plea.'") (quoting *United States v. Mosely*, 173 F.3d 1318, 1322 (11th Cir. 1999)). Pitts does not demonstrate that a reasonable probability exists that, absent counsel's alleged errors, he would have foregone a plea and proceeded to trial where he faced four possible life sentences.  *See Hill*, 474 U.S. at 59 (In the context of a guilty plea, to satisfy the prejudice inquiry under *Strickland*, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

Pitts's failure to establish prejudice precludes relief on this ground under *Strickland*.  Pitts fails to meet his burden of establishing that the state post-conviction court either unreasonably applied controlling Supreme Court precedent or

unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Two**

Pitts contends that his plea was involuntary based on trial counsel's misadvice about the use at trial of his post-arrest statements to the police.  Pitts alleges that after Detective Karen Lofton read him his *Miranda* warnings the following exchange took place (Doc. 1 at 10):

> Det[ective]: Having these rights in mind, do you wish to talk to us now?
>
> Pet[itioner]: How long will it take to get an attorney down here?
>
> Det[ective]: If you want an attorney that's totally up to you. It doesn't matter about time or anything like that.
>
> Pet[itioner]: Like, could—could we get a P.D. down here?
>
> Det[ective]: No.

Pitts alleges that after he was told that he could not have counsel, he "gave a statement to the police that included, but was not limited to, admissions of choking the victim, rough sex, anal and vaginal intercourse, anger towards the victim, drinking, a time line, admission to sending text messages, marital problems, and [an] explanation for doing so."  (Doc. 1 at 10)  Pitts argues that he clearly asserted his right to counsel and that his statements were obtained in violation of his right to counsel and the protection against self-incrimination.  He contends that his trial counsel should have seen the "obvious inadmissibility" of his statements and moved to suppress the statements.

22

Pitts claims that his counsel "never advised [him] of this basic right that would have changed his assessment of his chances to prevail at trial." (*Id.* at 11) He further claims that if he had been aware that his statements were inadmissible, he would have foregone the plea offer and insisted on proceeding to trial. In his reply Pitts alleges that counsels' alleged error rendered his plea involuntary. (Doc. 16 at 11)

The state post-conviction court denied relief as follows (Doc. 13-2, Ex. 13 at 225–28) (court's record citations omitted):

> Defendant claims that trial counsel was ineffective for failing to file a motion to suppress admissions he made to law enforcement during a custodial interrogation. Defendant alleges that he invoked his right to counsel but was refused counsel. He further alleges that after being refused counsel, he made incriminating statements to law enforcement. Defendant claims that had counsel filed a motion to suppress, he would not have entered a plea, but "at least would have been able to enter a knowing and voluntary plea with accurate information regarding what would be admitted against him at trial."

> Defendant alleges that in discovery, his counsel was provided with a transcript of the interview containing the statements that should have been suppressed. He further alleges that counsel should have seen the obvious inadmissibility of the statements and advised him that the statements were inadmissible and filed a motion to suppress the statements. Defendant makes clear that his counsel advised him that his statements would be admissible against him at trial. He explains that he did not understand at the time of his interrogation that continued questioning of a suspect after he requests his attorney is a violation of his rights and could result in the suppression of his statements. Defendant alleges that counsel never advised him of such a right, which would have changed his assessment of his chances to prevail at trial. Defendant alleges that the incriminating statements subject to suppression included admissions of choking, rough sex, anal and vaginal

23

intercourse, anger towards the victim, drinking, a time line, admission to sending text messages, and marital problems. Additionally, he attaches to his second and third amended motions the full transcript of the interrogation containing his statements. He alleges that counsel used the fact that Defendant's statements would be admissible as one of the main reasons to "scare" Defendant to accept a plea instead of going to trial. Defendant argues that had counsel filed a motion to suppress, the Court would have granted it. He claims that had his statements been suppressed, he would have refused to enter the unfavorable plea and would have insisted on proceeding to trial.

In order to establish a claim for ineffective assistance of counsel based on the failure to file a motion to suppress, a defendant must demonstrate that counsel knew a valid basis existed to suppress the relevant evidence, yet failed to do so. *See Harrison v. State*, 562 So. 2d 827, 827–28 (Fla. 2d DCA 1990). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious." *Zakrzewski v. State*, 866 So. 2d 688, 694 (Fla. 2003) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

In *Miranda v. Arizona*, the United States Supreme Court held that an individual subjected to a custodial interrogation by law enforcement "must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." 384 U.S. 436, 471 (1966). Under Florida law, a person invokes the right to a lawyer by asking for a lawyer. *See Smith v. State*, 699 So. 2d 629, 637–638 (Fla. 1997). Under *Miranda*, when a suspect who is subject to a custodial interrogation makes an unequivocal request indicating that he wishes to exercise his right to counsel, the interrogation must cease. *Green v. State*, 69 So. 3d 351, 353 (Fla. 2d DCA 2011). "However, if 'a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel,' the officer may continue questioning and has no obligation to clarify the equivocal statement." *Id*. (internal quotations and citations omitted) (emphasis in original).

24

In the interview attached to Defendant's amended motions, the transcript demonstrates that Defendant was read his *Miranda* rights at the outset of the custodial investigation. After being read his rights and asked if he understands his rights, the detective asked Defendant, "Having these rights in mind, do you wish to talk to us now?" Defendant responded by asking, "How long will it take to get an attorney down here?" The detective indicated, "If you want an attorney that's totally up to you. It doesn't matter about time or anything like that[.]" Defendant asked, "Like, could —could we get a P.D. down here?" The detective answered, "No." Defendant stated, "I'm just thinking, I—I mean, uh—." The detective interjected, "It's totally up to you." Defendant then stated, "I understand. I'll talk with you. Yes, ma'am." Defendant then appears to have signed the rights advisement form and the interview proceeded.

The Court finds that Defendant did not make an equivocal request for counsel. Defendant merely asked how long it would take to get an attorney and whether or not it was possible to have a public defender come to the interview at that exact moment. But, Defendant never actually requested the presence of an attorney at any time prior to or during his custodial interrogation, as evidenced by the interview transcript. The detective attempted to clarify Defendant's equivocal statements regarding Defendant's right to an attorney by stating that it was up to Defendant as to whether or not he wished to proceed with questioning or whether or not he wished to wait for the presence of an attorney. However, Defendant indicated his desire to proceed with the interview without the presence of an attorney. Finding that a motion to suppress would not have been granted on the basis that Defendant invoked his constitutional right to an attorney, Defendant's claim must fail. Accordingly, counsel was not deficient for failing to file a meritless motion and this claim is therefore denied. *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010) (stating that counsel "cannot be deemed ineffective for failing to raise a meritless argument.").

"When a person undergoing a custodial interrogation states that he wishes to remain silent the questioning must end, and if he expresses a desire to consult with an

attorney, the questioning must cease until one is provided for him." *United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004) (citing *Miranda*, 384 U.S. at 473–74). However, a suspect's invocation of his rights must be unequivocal. *United States v. Ochoa*, 941 F.3d 1074, 1098 (citing *Davis v. United States*, 512 U.S. 452, 461–62 (1994)). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459.

During his interview with the police Pitts did not unequivocally state either that he wished to consult an attorney or that he wished to remain silent. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) ("[The defendant] did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning. Here he did neither, so he did not invoke his right to remain silent." (quotation marks and citation omitted)). *See also, e.g., United States v. Sanitiful*, 701 F. App'x 242, 244 (4th Cir. 2017) (finding that the defendant never made a clear and unequivocal request for counsel when he asked "[g]otta a lawyer here right now?," was told none were available and that the interview would end if he insisted on having counsel, and then agreed to proceed with the interview without counsel). Based on the evidence presented, it was not unreasonable for the state court to conclude that Pitts's inquiry of the detective ("[C]ould we get a P.D. down here?") did not constitute an unequivocal invocation of either Pitt's right to counsel or his right to remain silent.

26

Consequently, trial counsel cannot be deemed deficient for failing to file a motion to suppress Pitts's statements to the police. *See Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (stating that to obtain relief on a claim of ineffective assistance of trial counsel for failing to file a motion to suppress, a petitioner must prove that (1) counsel's representation fell below an objective standard of reasonableness, (2) he has a meritorious Fourth Amendment claim, and (3) a reasonable probability of a different verdict exists absent the excludable evidence). The state courts' rejection of this ground is neither contrary to, or an unreasonable application of, *Strickland* nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Three**

Pitts contends that his plea was induced by trial counsel's failure to investigate two witnesses and the victim's military medical records. Pitts' allegations present three sub-claims for relief.

**Claim 1 - victim's prior boyfriend**

Pitts alleges that trial counsel should have investigated the victim's prior boyfriend. Pitts contends that the victim told him that her prior boyfriend "had taught her how to have anal sex and combining oxygen deprivation (choking) with sexual intercourse." (Doc. 1 at 13) Pitts asserts that he gave counsel this information but counsel neither investigated the information nor questioned the victim during her deposition about her sexual relations with her prior boyfriend. (Doc. 1 at 13) Pitts argues that counsel should have investigated this witness because the victim stated in

27

her deposition that she had never had anal sex before and was accusing Pitts of anally raping her.   (*Id*.)   Pitts claims "[n]o reasonable counsel would have foregone investigating this matter, especially where it is potential exculpatory evidence and critical impeachment evidence." (*Id*. at 14)

As the Respondent notes, when Pitts presented this claim to the state post-conviction court he faulted trial counsel for not investigating the victim's prior sexual history.  (Doc. 12 at 34)  Within this claim Pitts argued that his counsel should have investigated the victim's ex-boyfriend.  To the extent that Pitts asserts in claim 1 the same claim of ineffective assistance of counsel that he presented to the state court, he cannot obtain relief.   The state post-conviction court denied relief as follows (Doc. 13-3, Ex. 16 at 8–12) (court's record citations omitted):

> The main claim in Ground Three Defendant makes is that counsel failed to investigate the victim's prior sexual history. Defendant includes within this claim that had counsel investigated the victim's prior sexual history, counsel would have learned the name of the victim's ex-boyfriend, whom counsel further failed to investigate. Defendant alleges that he specifically advised counsel that the victim has an ex-boyfriend who could provide evidence to support his defense that the acts the victim complains of in the instant case were consensual. Defendant points out that after telling counsel about this boyfriend, counsel deposed the victim but failed to ask about any of her past boyfriends. Defendant clarifies that his claim is that counsel failed to investigate a witness, rather than failed to call a witness to testify at trial. Nonetheless, Defendant alleges that the ex-boyfriend was available to testify. Defendant argues that his partial identification of the victim's ex-boyfriend was sufficient for counsel to have investigated the ex-boyfriend further, including asking the victim for the names of her ex-boyfriends while questioning the victim during her deposition. Defendant contends that it would be

28

unfair to expect him to fully provide all of the identifying information of an essential witness because he was in custody. He asserts that he gave his counsel information that counsel should have followed up on to fully identify the ex-boyfriend and get in contact with him. Defendant alleges that the partially identified ex-boyfriend's testimony would have corroborated Defendant's allegations that [REDACTED] consensually engaged in the exact sexual activity she is complaining of in the instant case. He further alleges that this testimony would have undermined the victim's allegation that the sexual activities between her and Defendant were not consensual. The State was directed to respond to Defendant's claim.

. . . .

First, evidence of the victim's prior sexual relationship with Defendant is not made inadmissible by the rape-shield law. *See* § 794.022. Thus, had Defendant gone to trial, he could have cross-examined the victim about prior sexual encounters she had involving Defendant, including prior consensual choking and anal sex, which could have gone to the issue of consent. It was not necessary to put on testimony of a previous partner in order to establish that the victim had previously engaged in rough sex, including choking.

Next, Defendant merely alleges in his motion that he "believed" the ex-boyfriend could corroborate the victim's consensual involvement in the exact sexual activity she was complain[ing] about in this case. The Court finds Defendant's allegation regarding the ex-boyfriend to be speculative. *See Jones v. State*, 845 So. 2d 55, 64 (Fla. 2003) ("Postconviction relief cannot be based on speculative assertions."). Even if Defendant's claim as to the ex-boyfriend was not speculative, and the ex-boyfriend could have been discovered, could have provided testimony of a pattern of conduct including choking and anal sex, and was available to testify, the Court notes that Defendant's statements to law enforcement of what occurred differ significantly from the victim's account. Thus, Defendant's defense of consent to the violent nature of the sexual acts, alleged in this case would have been inconsistent with his

own account of the events as provided to law enforcement, which did not include violence. Furthermore, while the victim may have previously consented to anal sex and choking during sex, [this] does not in and of itself mean that she did consent on the occasion at issue, especially in light of the violent nature of the acts as described by the victim.

The victim testified at deposition that Defendant was arguing with her all day until he found his motorcycle battery, that he left [REDACTED] to go to the bar, that he later [REDACTED] at which time he used duct tape to bind her hands together and her feet together and to keep a sock in her mouth, carried her to the bathroom and placed her in the bathtub, filled the tub with water, climbed into the tub fully clothed on top of her and held her head under water for a couple of seconds, choked her three times, placed his foot into her shoulder to get out of the bathtub, he stripped his wet clothes off, and went to the living room to watch tv. The victim testified that she remained bound up in the tub and was crying, at which point Defendant then came back into the bathroom and tossed a kitchen knife at the victim, she used the knife to cut all of the duct tape off, took off the wet shirt and underwear she was wearing and sat at the edge of her bed in a towel. The victim testified that Defendant then entered the bedroom with his samurai sword, told her to lay down, and when she did he climbed on top of her and placed the sword into her shoulder, which he knew was already dislocated, then began to masturbate on top of her. The victim testified that Defendant then made her perform oral sex on him, told her he was going to have sex with her and she needed to shut up or he would kill her, began having vaginal sex with her, then put lubricant on her anus and began having anal sex with her, which she indicated was her first time, the entire time the victim was screaming in pain and Defendant was yelling at her to shut up or he would kill her. The victim testified that after Defendant ejaculated into her anus, he laid down on the bed with the sword next to him and told her to lay next to him.

Per Defendant's statements to police, as attached to Defendant's motion,[4] the two argued, Defendant left

---

4 *See* Doc. 13-3, Ex. 10 at 129–146.

[REDACTED] because he was upset, Defendant
[REDACTED] and had some alcoholic drinks, the victim
was in bed when Defendant [REDACTED] Defendant
asked the victim if she wanted to have sex, the victim
proceeded to perform oral sex on Defendant, this
progressed to vaginal sex, and then to anal sex. Defendant
did indicate to law enforcement that the victim liked rough
sex and often asked for him to choke her and pull the back
of her head. He did not indicate that she asked for either
violent act with respect to the sexual encounter at issue. He
did indicate that he had never tied the victim up before and
that he had never used a sword during sex before.
Comparing the victim's testimony with Defendant's
account of the events, it is clear that a defense based on
consent would have been weak.

Finally, the Court refers to the plea colloquy, where
Defendant indicated that he was giving up his rights to a
jury trial, that he needed no further time to consult with his
counsel about any part of the case, that he was ready to
move forward with the plea, that he was satisfied with the
representation of Ms. Ligon and Ms. McCabe, and that he
was agreeing that he was no longer contesting the case. The
record further reflects that Defendant received reduced
charges and fifteen years in prison as a result of his plea,
whereas he faced up to four life sentences if he proceeded to
trial. Based on all of the foregoing, the Court finds that
Defendant's claim of prejudice is refuted by the record. For
all of the aforementioned reasons, Ground Three is denied.

Pitts's unsupported contention that counsel should have investigated the

victim's prior boyfriend, without more, is insufficient to warrant relief. *See, e.g., United*

*States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of

a putative witness must generally be presented in the form of actual testimony by the

witness or an affidavit.  A defendant cannot simply state that the testimony would

have been favorable; self-serving speculation will not sustain an ineffective assistance

claim.") (footnotes omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)

(recognizing that vague, conclusory, or unsupported claims cannot support an ineffective assistance of counsel claim). "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009).[5] Pitts has failed to present either actual testimony or an affidavit from the unnamed prior boyfriend. Consequently, Pitts's contention that the prior boyfriend could have provided evidence to support his defense that the acts the victim complained of were consensual is speculative. Pitts fails to show that he would have foregone a plea and faced four possible life sentences if trial counsel had investigated the victim's prior boyfriend as he suggests. Because he shows no prejudice, Pitts's claim of ineffective assistance of counsel warrants no federal habeas relief because *Strickland's* requirements remain unsatisfied. The state courts' rejection of this claim of ineffective assistance of trial counsel is neither contrary to, or an unreasonable application of, *Strickland* nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(1), (d)(2).

## Claim 2 - Christine Lacy

Pitts contends that his trial counsel should have investigated his mother, Christine Lacy. Pitts alleges that the victim stated in her deposition that sometime before the crimes the victim told Lacy that Pitts had "unconsensually" choked her on previous occasions. (Doc. 1 at 14) Pitts asserts that after he read the victim's

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36–2.

deposition he alerted trial counsel that the victim had never made such statements to his mother because he had never choked the victim without her consent. Pitts argues that if his trial counsel had investigated further, Lacy "would have denied ever being told this by the victim and would have been available and ready to testify to such a fact." (*Id.*) Pitts claims that investigation of this matter was "critical" because "it goes to the heart of [his] assertion that he is innocent of all charged offenses because all choking and sexual intercourse between he and the victim was consensual and the victim injured her shoulder while doing exercises on the Air Force base." (*Id.*) Pitts argues Lacy's testimony could have been used to impeach the victim.

Pitts admits in his petition that he did not exhaust this claim of ineffective assistance of trial counsel in the state court and asserts the ineffective assistance of his post-conviction counsel as cause to overcome the procedural default of the claim. (Doc. 1 at 15) The Respondent argues that under *Martinez v. Ryan*, 566 U.S 1 (2012), the ineffective assistance of post-conviction counsel does not serve as cause for the default of this claim. (Doc. 12 at 33) Pitts argues in his reply that *Martinez* "clearly applies" to excuse the default of this claim. (Doc. 16 at 19)

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."

*Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate not only that an error at the trial created the possibility of prejudice, but that the error worked to his actual and substantial disadvantage and infected the entire trial with "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  In other words, a petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986).  A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet the "fundamental miscarriage of justice" exception, a petitioner must show constitutional error coupled with "new reliable evidence—whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Pitts's failure to fairly present his federal claim in the state court deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845.  Pitts cannot return to state court to raise the unexhausted claim in an untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b).

34

Consequently, the exhaustion requirement remains unsatisfied, rendering claim 2 of Ground Three procedurally defaulted.   Recognizing the default, Pitts asserts entitlement to federal review under *Martinez v. Ryan*, 566 U.S. 1 (2012).

*Martinez* holds that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17.   A claim that lacks merit or is wholly without factual support is not "substantial."   *Id.* at 15–16.

Pitts filed with his reply a notarized letter from Lacy in which Lacy states (Doc. 17 at 8):

> Back in 2013, the victim in this case . . . stated during her statement that I was aware of abuse going on in their relationship. I was never told or witnessed verbal or physical abuse from my son. Please give me the opportunity to be the one to inform that I am a domestic violence survivor myself and I would never tolerate abuse from any man[,] especially my own son. My son and the victim lived with me for about 5 months after my son was honorably discharged from the military. My son's attorney never requested for me to testify or depose me, I was willing and available to testify if I had been asked.

The record shows that in her deposition the victim twice stated that she told Pitts's mother about Pitts physically abusing her. (Doc. 13-2, Ex. 15 at 333, 335)[6] Pitts

---

[6] The victim testified in her deposition as follows (Doc. 13 2, Ex. 15 at 333, 335):

argues that "[a]ny reasonable counsel would have found investigating this matter very critical where it goes to the heart of Petitioner['s] assertion that he is innocent of all charged offenses because choking and sexual intercourse between he and the victim was consensual . . . ." (Doc. 1 at 14)  Lacy's unsworn statement, at best, suggests that trial counsel did not ask her to appear for a deposition or to testify at trial.  Lacy specifically states "[t]he reason for this letter is because I would like to provide facts that were not taken into consideration during Charles's sentencing process." (Doc. 17 at 8)  The statement does not demonstrate that trial counsel did not investigate the victim's statements or question Lacy about the victim's deposition before Pitts entered his plea.  Pitts fails to demonstrate a reasonable probability exists that absent trial

---

Q: Okay. So at any time when you all had these incidents at [REDACTED] when you first got here, did you ever call the police?

A: No, but I did tell his mother multiple times, and she told me to leave him.

. . . .

Q: Okay. So the only time you reported these incidents was when you first came to the States was just to his mother?

A: Yes.

Q: Okay. And you said her response was to leave him?

A: Yes, she told me I needed to leave him, because I told her he was getting very abusive and he was choking me and she told me to leave.

Q: And did you or did you not -- did you take her advice?

A: No. He told me if I ever left him he would find me and he would kill me.

counsel's alleged failure to investigate Lacy he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59.

Accordingly, Pitts does not overcome the procedural default under *Martinez* because he fails to show either that his defaulted ineffective assistance of trial counsel claim is substantial or that post-conviction counsel was ineffective for not raising it. Pitts cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Pitts satisfies neither exception to procedural default, claim 2 is procedurally barred from federal review.

## Claim 3 - victim's military medical records

Pitts contends that his trial counsel rendered ineffective assistance by not investigating the victim's military medical records which would have shown that the victim injured her shoulder prior to the crimes while doing exercise drills with the Air Force. (Doc. 1 at 14) Pitts alleges that despite him telling trial counsel "that it should be in the victim['s] military medical file as to exactly when and how she actually injured her shoulder," trial counsel failed to obtain the medical records. (*Id*.) Pitts alleges that "no reasonable counsel would have foregone investigating this matter, especially where it is potentially exonerating evidence and critical impeachment evidence." (*Id*. at 15)

Pitts did not present this claim to the state court and the Respondent contends that the claim is unexhausted and procedurally defaulted. (Doc 12 at 32–34) Pitts asserts the application of *Martinez* and argues the ineffective assistance of his

post-conviction counsel as cause to overcome the procedural default of the claim. (Doc. 1 at 15)

Contrary to Pitts's contention, the record shows that trial counsel was aware of the medical records and tried to obtain them. (Doc. 13-3, Ex. 15 at 294)[7] Pitts fails to substantiate his contention that the victim's medical records were "potentially exonerating." Even assuming that the records show that the victim sustained a shoulder injury before the crimes, Pitts fails to show that such evidence would likely have led counsel to change her recommendation as to the plea. Pitts fails to demonstrate a reasonable probability exists that absent trial counsel's alleged failure he would not have pleaded guilty and would have insisted on going to trial. *See Hill*,

---

[7] During the January 14, 2014, pretrial hearing trial counsel advised the judge as follows (Doc. 13-2, Ex. 15 at 293–94):

> MS. LIGON: Your Honor, last week we were -- I had been in contact with the -- the victim; and I had urged her to contact the State, that we wanted to move forward with doing the deposition. So we did complete the deposition last week with Ms. Festa with Ms. Festa's return.

> MS. MCCABE: That's why we, Ms. Festa and I, came in, I believe a day after the deposition, and told the Court that we were going to need to continue it through the trial. There are maybe two more depositions that we want to take and there are some medical records that we're trying to obtain. I spoke with Ms. Festa this morning; she's going to see if the victim will waive the HIPAA waiver so that we can get those quicker.

> THE COURT: Medical records related to the case?

> MS. MCCABE: She is claiming injury from her shoulder as part of this case and I guess previous incidents, also. But we need to see those medical records.

38

474 U.S. at 59.   Accordingly, Pitts does not overcome the procedural default under *Martinez* because he fails to show that his defaulted ineffective assistance of trial counsel claim is substantial or that postconviction counsel was ineffective for not raising it.   Pitts cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent.   *Schlup*, 513 U.S. at 327.   Because Pitts satisfies neither exception to procedural default, claim 3 is procedurally barred from federal review.

**Ground Four**

Pitts contends that his plea was involuntary as a result of trial counsel's failure to advise him of an allegedly viable defense of consent.   Pitts alleges that he "specifically told trial counsel that he is innocent of all charges because all sexual intercourse and physical acts (choking) were consensual between him and the victim (his wife) and the victim actually injured herself while exercising on the Air Force base." (Doc. 1 at 17)   Pitts claims that he told trial counsel that "the victim only fabricated the lack of consent because she was upset about his daughter, whom he only discovered was his daughter through DNA testing right after he and the victim had gotten married and because she didn't want to be looked at in a bad light by the Air Force due to her sexual desires." (*Id.*)   Pitts argues that the victim's deposition testimony that she was forced by the Air Force to report the incident to the police and allow herself to be photographed as part of the investigation "clearly supports possible motive for the victim to fabricate the lack of consent . . . ." (*Id.* at 18)   Pitts contends that the victim's deposition testimony, combined with the alleged impeachment

39

evidence from the victim's former boyfriend and Pitts's mother, the lack of physical evidence, and Pitts's own version of the incident "should have alerted any reasonable counsel that Petitioner had a viable defense of consent to the charged crimes." (*Id.*) Pitts claims that his trial counsel did not explain the elements of each of the charged offenses, did not alert him to a "very viable" defense, and affirmatively misadvised him that he had no viable defense. (*Id.*) Absent counsels' alleged errors, Pitts contends that he would have rejected the plea offer and proceeded to trial.

Pitts acknowledges that the did not exhaust this ground of ineffective assistance of counsel in the state court. (Doc. 1 at 18) The Respondent mischaracterizes Pitts's allegations as alleging a claim of actual innocence. (Doc. 12 at 40–41) In his reply Pitts "points this Court['s] attention to the fact [that] he asserted his innocence when alleging the facts as they pertain to his claim of trial counsel['s] failure to advise him of a viable defense" but that "[t]he gist of the claim asserted in ground four of his habeas petition before this Court remains [that] his plea was involuntary where he received constitutional ineffective assistance of counsel when counsel failed to advise him of a viable defense to the charged offenses." (Doc. 16 at 20–21) In the response, the Respondent does not address the ineffective assistance of counsel claim and does not assert lack of exhaustion or procedural default. Pitts avers that he did not exhaust this ground in the state court but appears to argue entitlement to federal review under *Martinez* by asserting the ineffective assistance of post-conviction counsel as cause for his failure to present the claim in his Rule 3.850 motion. (Doc. 1 at 18)

Contrary to Pitts's contention, the factual basis, read into the record and to which Petitioner agreed under oath, demonstrates that his actions were criminal and committed without the victim's consent.  Pitts fails to demonstrate that trial counsel's failure to advise him of a viable consent defense was unreasonable.  In light of the evidence against him, including his post-arrest statements to the police, coupled with the considerable benefit of not facing multiple life sentences by pleading guilty, Pitts fails to demonstrate a reasonable probability that he would not have foregone his plea absent counsel's alleged failure to advise him of a consent defense.  Moreover, as the state court noted in its order denying Pitts's third amended Rule 3.850 motion, a consent defense would have been weak.  (Doc. 13-3, Ex. 16 at 12)  Because he cannot show that this ground of ineffective assistance of trial counsel is substantial, *Martinez* does not excuse the default of this ground.  Pitts cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent.  *Schlup*, 513 U.S. at 327.  Because Pitts satisfies neither exception to procedural default, Ground Four is procedurally barred from federal review.

**Ground Five**

Pitts contends that the cumulative effect of counsels' alleged errors deprived him of his rights under the Fifth, Sixth, and Fourteenth Amendments.[8]  Pitts argues that

---

[8] Pitts alleges that the cumulative effect of counsels' errors also violates his rights under Article One, sections nine and sixteen of the Florida constitution. (Doc. 1 at 20) Pitts's alleged violations of the state constitution present no basis for federal relief because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67–68.

"the cumulative effect of such acts[,] omissions, errors, and deficiencies when considered as a whole did cause enough prejudice to cause Petitioner['s] guilty plea to be entered involuntarily." (Doc. 1 at 20)

The state post-conviction court denied relief as follows (Doc. 13-3, Ex. 16 at 8):

> Defendant claims that had his counsel been prepared to try his case, including, as argued in his other grounds for relief, suppressed his statements, explored prior sexual history of [REDACTED], located former boyfriends of [REDACTED], analyzed physical evidence and compared DNA findings to testimony, and explore sexual battery claims, he would not have entered his guilty plea and would have insisted on going to trial. The Court previously reserved ruling on this claim. Having found that all of Defendant's claims are without merit or refuted by the record, the Court finds that Defendant's claim of cumulative error must fail. This ground is denied.

"Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See also Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [an applicant] received a fair trial as is [his] due under our Constitution."). Because each of Pitts's grounds of ineffective assistance of counsel lacks merit, no cumulative prejudicial effect results. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting a claim of cumulative error because "none of [petitioner's] individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"); *Wood v. Sec'y, Fla. Dep't of Corr.*, 793 F. App'x 813, 818 (11th Cir. 2019) ("In light of [*United States v.*] *Cronic*, [466 U.S. 648

(1984)], and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance, the state court's holding is not contrary to, or an unreasonable application of, clearly established federal law."). The state post-conviction court neither unreasonably applied controlling Supreme Court precedent nor unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Pitts's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk is directed to enter a judgment against Pitts and **CLOSE** this case.

**DENIAL OF BOTH A
CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL IN FORMA PAUPERIS**

IT IS FURTHER ORDERED that Pitts is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Pitts must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 478 (2000); *Eagle v. Linahan,* 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits

of the claims or the procedural issues, Pitts is entitled to neither a certificate of appealability nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Pitts must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida this 23rd day of September, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unrepresented parties, if any